**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RUBEN LOPEZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>DISTRICT OF COLUMBIA,<br><br>                    Defendant. | Civil Action No. 23-1852 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Ruben Lopez brings this suit against defendant the District of Columbia (the "District"), alleging discrimination based on sexual orientation, personal appearance, gender expression, disability, national origin, and race, as well as retaliation, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq. See generally* Am. Compl., ECF No. 10. Defendant does not move to dismiss plaintiff's retaliation claim but has moved to dismiss the federal discrimination claims based on sexual orientation, disability, national origin, and race for failure timely to exhaust administrative remedies; and the DCHRA claims based on sexual orientation, personal appearance, gender expression, national origin, and race as time barred. *See* Def.'s Partial Mot. to Dismiss ("Def.'s Mot.") at 1–2, ECF No. 13; *see also* Pl.'s Opp'n Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 14; Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply"), ECF No. 15. Defendant also moves to dismiss or, in the alternative, for summary judgment on the DCHRA claims based on disability because plaintiff was provided a reasonable accommodation. *See* Def.'s Mot. at 12–14. For the reasons below, defendant's motion is GRANTED.

I.      **BACKGROUND**

The factual background and procedural history of the instant matter are summarized

below.

A.      **Factual Background**

Plaintiff was hired, on April 15, 2019, to serve as a Human Resources ("HR") Specialist

in the District's Metropolitan Police Department ("MPD").  Am. Compl. ¶ 18.  Two weeks later,

Renee Turner-Inman was hired as the Deputy HR Director and became plaintiff's direct

supervisor.  *Id.* ¶ 19.

Plaintiff alleges that for the six-month period, from May to November 2019, Turner-

Inman harassed plaintiff based on his sexual orientation, personal appearance, and gender

expression, including:

- On May 24, 2019, after Turner-Inman met plaintiff's husband, she told plaintiff to "be careful when talking on the phone because nobody in the office 'needed to know' about his sexual orientation."  *Id.* ¶ 20.

- On June 10, 2019, "after seeing [plaintiff] dancing at [a] gay pride festival," Turner-Inman "ridiculed" plaintiff in front of his colleagues, made discriminatory remarks, and mimicked plaintiff's "mannerisms and other non-verbal more feminine behaviors such as his gate and speech," which conduct both plaintiff and his colleagues perceived as discriminatory.  *Id.* ¶ 21.

- On July 15, 2019, Turner-Inman told plaintiff that several police officers who needed to have their retirement paperwork processed refused to work with plaintiff due to "his mannerisms and sexual orientation," and then refused to tell plaintiff the names of these officers and took no action to intervene.  *Id.* ¶ 26.

- Turner-Inman regularly instructed plaintiff to "act straight," including in August 2019, when she also told him "just because you are gay doesn't mean you can't act straight." *Id.* ¶¶ 22–23.

- On November 6, 2019, Turner-Inman yelled at plaintiff and made disparaging remarks about his sexual orientation and the way he dressed, such as by remarking that plaintiff "dressed and acted 'like a woman'" and "was behaving 'inappropriately' when speaking with his husband on the phone in a public area."  *Id.* ¶ 24.

- On November 6, 2019, Turner-Inman commented that plaintiff's feminine appearance was "unprofessional" and told him that he needed to "work on" his mannerisms, such as the way he talks and moves his hands, because "they were embarrassing for MPD HR." *Id.* ¶ 25.

According to plaintiff, Turner-Inman also harassed him based on his Hispanic race and national origin, as being from Honduras. *Id*. ¶ 1. In August 2019, Turner-Inman told plaintiff, who speaks fluent English, that she did not understand why MPD hired him in light of his "thick accent" and that she did not have time to try to listen to him more carefully. *Id.* ¶¶ 27–28. On November 6, 2019, Turner-Inman yelled at plaintiff in public, mispronounced his name, and again disparaged his "thick accent." *Id.* ¶ 29.

Plaintiff further alleges that he was denied reasonable accommodations. During plaintiff's first 1-on-1 meeting with Turner-Inman, plaintiff notified her of his 2018 diagnosis of cancer, anxiety, and depression and his need for certain specific accommodations to perform his job adequately and properly take care of his health. *Id.* ¶¶ 32–33. He asked, for example, to adjust his working hours by an hour—from 8:00 a.m. through 4:30 p.m. to 7:00 a.m. through 3:30 p.m.—to accommodate his need "to take very strong medication at 5 p.m. exactly every day with a meal." *Id.* ¶ 34. Plaintiff believes this request could have been accommodated because he had seen other employees in the office as early as 7:00 a.m. *Id.* ¶ 35. Although plaintiff provided Turner-Inman with the necessary medical paperwork and followed up in writing about his requested accommodations in May, June, and July 2019, Turner-Inman never addressed plaintiff's requests. *Id.* ¶ 33.

Plaintiff reported the above conduct to numerous people within MPD, including Chief of Police Peter Newsham and the HR Department, but nobody stepped in. *Id.* ¶¶ 31, 41. On October 15, 2019, he filed an internal Equal Employment Opportunity ("EEO") complaint, alleging harassment, discrimination, hostile work environment, and failure to accommodate, *id.*

¶ 36, which allegations are not at issue in the pending motion.  The next day, Turner-Inman allegedly warned him: "you know you have one foot out the door."  *Id.*

Several weeks later, plaintiff received a negative performance evaluation, which described plaintiff's communication with individuals outside of HR as "unprofessional," a criticism that plaintiff believes refers to his "affect (i.e., his sexual orientation, personal appearance, and gender expression) and national origin (i.e., his accent)."  *Id.* ¶ 38.  Plaintiff asked to meet with Turner-Inman and her supervisor Angela Simpson to review his performance evaluation.  *Id.* ¶ 40.

Plaintiff was terminated on December 12, 2019.  *Id.* ¶ 42.

### B.    Procedural Background

Four months after his termination, on April 13, 2020, plaintiff reported his allegations of discrimination to MPD's EEO Investigations Division, and on June 4, 2020, he received an Exit Letter and Notice of Right to File a Formal Complaint.  *Id.* ¶¶ 8–9.

On June 17, 2020, plaintiff, who was represented by counsel, filed an Intake Questionnaire with the D.C. Office of Human Rights ("DCOHR"), *id.* ¶ 10, which questionnaire included multiple-choice and narrative components, *see* Def.'s Mot. to Dismiss, Ex. 2 ("Intake Q."), ECF No. 13-2.  One of the multiple-choice questions asked plaintiff to "check box(es) that apply" to finish the sentence, "[y]ou feel you were discriminated against because of your [blank]."  Intake Q. at 1.  Plaintiff checked the boxes for "race," "disability," "sex," "color," "sexual orientation," and "retaliation."  *Id.*  He did not check the boxes for "national origin," "personal appearance," or "gender identity or expression."  *Id.*

In the narrative portion of the Intake Questionnaire, plaintiff set out his allegations of disability discrimination, including that Turner-Inman, who allegedly knew of plaintiff's cancer,

anxiety, and depression diagnoses, (1) "did not take any action" on some of plaintiff's requests

for specific accommodations, (2) "refused" plaintiff's request "to change [his] tour of duty from

8:00 a.m.–4:30 p.m. to 7 a.m.–3:30 p.m. to accommodate [his] medical treatments and

appointments," and (3) "infrequently respected" three additional accommodations of "lunch at

noon, a weekly meeting to discuss [his] assignments, and instructions to be sent via email." *Id.*

at 3.  As to his alleged retaliation, plaintiff stated that in response to his October 2019 EEO

Complaint, (1) Turner-Inman warned, "you know you have one foot out the door," (2) plaintiff

received a negative performance review, and (3) plaintiff was terminated, rather than provided an

opportunity "to review [his] performance evaluation." *Id.*  Plaintiff concluded, "[f]rom July

2019 through my termination on December 12, 2019, Ms. Turner-Inman accused me of a series

of minor violations," without linking any of these "minor violations" to a protected characteristic

or his allegations of retaliation. *Id.*

On January 13, 2021, 398 days after plaintiff's termination, plaintiff, who was

represented by counsel, filed a Charge of Discrimination with DCOHR ("DCOHR Charge"),

Am. Compl. ¶ 11, which charge also included multiple-choice and narrative components, *see*

Def.'s Mot. to Dismiss, Ex. 3 ("DCOHR Charge"), ECF No. 13-3.  The multiple-choice

component asked plaintiff to "[c]heck appropriate box(es)" to complete the phrase

"discrimination based on."  DCOHR Charge at 1.  Plaintiff checked the boxes for "sex,"

"national origin," "retaliation," and "[o]ther (specified below)." *Id.*  By contrast to his June 2020

Intake Questionnaire with DCOHR, he did not check the boxes for "race," "color," or

"disability." *Id.*

In the narrative portion of the DCOHR Charge, plaintiff alleged two separate counts.

First, under the heading "DISPARATE TREATMENT (Discharge) – Sex/Sexual Orientation,

Personal Appearance, Gender Expression, and National Origin," plaintiff alleged that Turner-Inman (1) scolded plaintiff, saying "Why can't you follow my instructions. Just because you are gay, doesn't mean you can't think straight"; (2) told plaintiff he was "dressing very femininely" and "needed to start wearing more 'professional' clothing"; (3) instructed plaintiff "to work on [his] mannerisms (how [he] talk[s], how [he] move[s] [his] hands, etc.) because it was embarrassing for the MPD Human Resource Department when [he] needed to interact with other departments"; (4) told plaintiff to speak on the phone with his husband in a private place because "[n]o one needs to know that you are gay"; (5) criticized plaintiff's "heavy accent" several times; (6) gave plaintiff a poor performance review; and (7) terminated him. *Id.* These acts, plaintiff contends, were "based on [his] sex (male), sexual orientation (gay), national origin (Honduras), personal appearance (feminine dress), and gender expression (feminine dress and mannerisms)." *Id.*

Second, under the heading "RETALIATION (Discharge) – Internal Complaint," plaintiff repeated the allegations of retaliation first set out in his Intake Questionnaire and added more detail, including that (1) plaintiff reported, to an HR specialist, Turner-Inman's comment about him having "one foot out the door," but despite his "several attempts," he "never got a chance to speak with [the HR specialist] or to get on her schedule to discuss the matter"; (2) Turner-Inman "stopped speaking" to plaintiff after issuing his negative performance evaluation; and (3) defendant's "alleged reason for [plaintiff's] termination was [his] one-year probationary period." *Id.* at 2.

After receipt of defendant's response, DCOHR administratively dismissed plaintiff's DCOHR Charge on May 18, 2023, Am. Compl. ¶¶ 13, 14, the Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue letter on June 16, 2023, *id.* ¶ 16, and plaintiff

commenced this action less than two weeks later, on June 26, 2023, *see* Compl., ECF No. 1.  As amended, the operative complaint alleges sexual orientation discrimination under Title VII and the DCHRA (Count 1); personal appearance discrimination (Count 2) and gender expression discrimination (Count 3), under the DCHRA; disability discrimination under the ADA and the DCHRA (Count 4); national origin and race discrimination under Title VII and the DCHRA (Count 5); and retaliation under Title VII and the DCHRA (Count 6).  Defendant seeks dismissal of Counts 1 through 5.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (citation omitted).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability" and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construing all reasonable inferences in the plaintiff's favor.  *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  A court, however, does not "accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the

complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations in original accepted and citation omitted).

In general, a court must treat a Rule 12(b)(6) motion as a Rule 56 motion for summary judgment if it considers "matters outside the pleadings." FED. R. CIV. P. 12(d). This conversion rule is not triggered, however, when a court considers "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted); *see also Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023) (same). The conversion rule is also not triggered when a court considers documents attached to a defendant's motion to dismiss that are referred to in the complaint and are integral to the plaintiff's claim, "to the extent the plaintiff[] intend[s] incorporation." *Valambhia v. United Republic of Tanzania*, 964 F.3d 1135, 1137 (D.C. Cir. 2020); *Graham*, 798 F.3d at 1133 (cautioning that "[i]f a document itself comes before the court only as an attachment to the defendant's motion to dismiss, it may not be appropriate for the court to treat the entire document as incorporated into the complaint," and thus, "[w]hen considering incorporation, it is necessary to consider why a [party] attached the documents, who authored the documents, and the reliability of the documents" (citation omitted)).[1]

---

[1]     For this reason, the following documents, which are attached to defendant's motion and referenced and quoted as central to plaintiff's claims in the Amended Complaint, may be considered: (1) the Intake Questionnaire, *see* Intake Q.; Am. Compl. ¶¶ 10, 12; and (2) the DCOHR Charge, *see* DCOHR Charge; Am. Compl. ¶¶ 11–12. Plaintiff raises no objection to their authenticity or consideration. *See, e.g.*, Pl.'s Opp'n at 4, 6, 8 (citing and relying on the Intake Questionnaire); *see also Ross v. Georgetown Univ.*, No. 18-cv-671, 2019 WL 2452326, at *5 n.2 (D.D.C. June 12, 2019) (concluding that Intake Questionnaire and Charge of Discrimination, though "not attached to his complaint, . . . have been incorporated by reference since each is 'referred to in the complaint and is integral to plaintiff's claim,'" and are thus properly considered "on a motion to dismiss without converting the motion into a motion for summary judgment" (alterations in original accepted) (quoting *Graham*, 798 F.3d at 1133)); *Sierra v. Hayden*, 254 F. Supp. 3d 230, 237–38 (D.D.C. 2017) ("In the context of exhaustion, courts are willing to rely upon . . . administrative complaints without converting the motion into one for summary judgment when the documents are referred to in the complaint, are integral to the plaintiff's exhaustion of administrative remedies, and are public records subject to judicial notice. . . . Even a court adopting a strict interpretation of the outside materials that may be considered at the motion-to-dismiss stage concluded that the court could consider the plaintiff's EEOC

## III.    DISCUSSION

As amended, the complaint alleges sexual orientation discrimination under Title VII and the DCHRA (Count 1), personal appearance discrimination (Count 2) and gender expression discrimination (Count 3) under the DCHRA, disability discrimination under the ADA and the DCHRA (Count 4), national origin and race discrimination under Title VII and the DCHRA (Count 5), and retaliation under Title VII and the DCHRA (Count 6).

Defendant moves for partial dismissal of the amended complaint.  Specifically, defendant moves to dismiss (1) plaintiff's federal discrimination claims based on sexual orientation, national origin, and race, in Counts 1 and 5, respectively, for failure to timely exhaust administrative remedies; and (2) plaintiff's D.C. discrimination claims based on sexual orientation, personal appearance, gender expression, national origin, and race, in Counts 1, 2, 3, and 5, respectively, as time barred.  *See* Def.'s Mot. at 2–3.[2]  Defendant does not challenge the D.C. or federal retaliation claims, in Count 6, which claims thus remain pending.  *Id.* Defendant's two arguments as to plaintiff's failure to administratively exhaust and certain claims being time barred are addressed *seriatim*.

---

complaint." (alterations in original accepted and citation omitted)); *Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 29 n.1 (D.D.C. 2009) (considering, on a motion to dismiss, several exhibits, including memoranda, emails, and letters, attached to defendant's motion and mentioned at least once in the complaint), *aff'd*, 377 F. App'x 34 (D.C. Cir. 2010).  Whether defendant's August 15, 2019 response to plaintiff's accommodation request may be considered, however, need not be resolved since plaintiff does not object to dismissal of his disability discrimination claim, which is the only claim that relies on this exhibit.  *See* Def.'s Mot. to Dismiss, Ex. 1, ECF No. 13-1; *see also* Def.'s Reply at 5–6 (acknowledging that only plaintiff's disability discrimination claim turns on whether plaintiff was provided with a reasonable accommodation).

[2]      Defendant also moves to dismiss plaintiff's federal and D.C. disability discrimination claim, in Count 4, for failure to timely exhaust administrative remedies and because plaintiff was provided a reasonable accommodation, respectively.  *See* Def.'s Mot. at 2–3.  Plaintiff "does not oppose" dismissal of these claims, *see* Pl.'s Opp'n at 12, and thus defendant's motion to dismiss Count 4 is granted, as conceded.

### A.        Federal Claims: No Timely Administrative Exhaustion (Counts 1 and 5)

Title VII "specifies with precision the prerequisites that a plaintiff must satisfy before filing suit." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).  One such prerequisite is a plaintiff's duty to exhaust all administrative remedies in a timely fashion prior to bringing a Title VII action in federal court.  *See Lewis v. City of Chicago*, 560 U.S. 205, 210 (2010); *see also* 42 U.S.C. § 2000e–5(f)(1).  The purpose of this exhaustion requirement is "to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011) (citation omitted).  Exhaustion of administrative remedies is an affirmative defense that a defendant must prove by a preponderance of the evidence.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  As the discussion that follows makes clear, plaintiff has failed to satisfy the timing prerequisites under Title VII for consideration of the merits of his federal discrimination claims based on sexual orientation, national origin, and race, in Counts 1 and 5.[3]

### 1.        *Legal Standard for Timely Exhaustion of Title VII Claims*

With respect to timing, Title VII requires a "person aggrieved" to file a "charge" with the EEOC within 180 days of the alleged unlawful employment practice, 42 U.S.C. § 2000e–5(e)(1), but this period is extended to 300 days in jurisdictions with entities that have "the authority to grant or seek relief with respect to the alleged unlawful practice," *Morgan*, 536 U.S. at 109.  The District of Columbia is one such jurisdiction, and under DCOHR's worksharing agreement with the EEOC, the time for filing a charge of discrimination in the District of Columbia is 300 days. *See Carter v. George Washington Univ.*, 387 F.3d 872, 879 (D.C. Cir. 2004) (citing 29 C.F.R.

---

[3]        As noted, *see supra* note 2, defendant also challenged plaintiff's federal disability discrimination claim in Count 4 for failure timely to exhaust administrative remedies, but that challenge need not be addressed given plaintiff's consent to dismissal of that claim.

§ 1601.13(a)(4)(ii)(A)).  This timing requirement "essentially functions as a statute of limitations for Title VII actions," *Carter v. Wash. Metro. Area Transit Auth.*, 503 F.3d 143, 145 (D.C. Cir. 2007), and "[a] claim is time barred if it is not filed within these time limits," *Morgan*, 536 U.S. at 109; *see also Fort Bend Cnty. Tex. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (explaining that Title VII's timing provisions are "mandatory").

"A Title VII lawsuit following [an] EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations," to ensure that the charged party is provided adequate notice of the claim, to allow for "the administrative investigation that can reasonably be expected to follow the charge of discrimination," and to "narrow[] the issues for prompt adjudication and decision."  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citations omitted).  A plaintiff may amend an EEOC charge "to cure technical defects or omissions," "to clarify and amplify allegations made therein," or to allege "additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge."  29 C.F.R. § 1601.12(b).  Such amendments will "relate back to the date the charge was first received," thereby permitting the amended allegations to potentially fall within the 300-day requirement.  *Id.*

Courts have not permitted suits to proceed, however, when a plaintiff files a suit alleging a new substantive theory of discrimination not previously raised in the original EEOC charge or raised only in an amendment made outside the 300-day window.  *See Little v. Garland*, No. 22-cv-1511, 2023 WL 2913642, at *3 (D.D.C. Apr. 12, 2023) (collecting cases); *see, e.g.*, *Marshall v. Honeywell Tech. Sols., Inc.*, 536 F. Supp. 2d 59, 67 (D.D.C. 2008) (explaining that "[a]mendments alleging actionable claims generally are not permitted to relate back to initial complaints if the later claims were not mentioned in the original complaint and are not based on

the same set of facts," and concluding that "where administrative complaints for discrimination

based on sex, race and retaliation do not mention critical facts relevant to an age discrimination

claim, the later filed age claims do not relate back"); *Thrash v. Libr. of Cong.*, No. 4-cv-634,

2006 WL 463251, at *6 (D.D.C. Feb. 24, 2006) ("[T]he court determines that the defendant did

not have notice of the plaintiff's charges of age discrimination for a refusal to transfer the

plaintiff based on her administrative charges of race and gender discrimination."); *Wilson v.

Commc'ns Workers of Am.*, 767 F. Supp. 304, 306 (D.D.C. 1991) (holding that because the

"amendment added a new substantive theory which is fundamentally distinct from the original

race discrimination charge," it "did not relate to, or grow out of [the plaintiff's] original EEOC

charge").

### 2.     *Application to Plaintiff's Federal Discrimination Claims*

Applying these principles, defendant argues that plaintiff's federal discrimination claims

based on sexual orientation (Count 1), national origin, and race (Count 5) should be dismissed

for failure to timely exhaust administrative remedies.  Defendant is correct.

First, plaintiff filed, on June 17, 2020, a timely Intake Questionnaire, but nothing in the

Intake Questionnaire indicated that he was alleging national origin discrimination.[4]  He neither

checked the "national origin" box in the multiple-choice section nor included any factual

allegations in the narrative section that would suggest discrimination based on national origin.

---

[4]     The D.C. Circuit has not addressed the question whether an Intake Questionnaire filed with DCOHR is a formal "charge" of discrimination, with divided opinion about the issue on this Court.  *Compare Ross*, 2019 WL 2452326, at *5–6 (concluding that DCOHR Intake Questionnaire does not qualify as a "charge" that was cross-filed with the EEOC for purposes of the statute of limitations (citing *Dyson v. District of Columbia*, 710 F.3d 415, 418 (D.C. Cir. 2013) (holding that EEOC "Intake Questionnaire is not a Charge of discrimination")), *with Johnson v. District of Columbia*, No. 18-cv-399, 2019 WL 11867066, at *1 (D.D.C. June 14, 2019) (rejecting defendant's argument that DCOHR Intake Questionnaire "does not qualify as a charge").  *See Fed. Exp. Corp. v. Holowecki*, 128 S. Ct. 1147, 1159 (2008) (suggesting that a case-by-case approach should be taken to determine whether an Intake Questionnaire is a charge).  Since plaintiff's federal claims of personal appearance, gender expression, and national origin discrimination are untimely even if plaintiff's Intake Questionnaire constitutes a "charge," the Court assumes, without deciding, that plaintiff's Intake Questionnaire constitutes a "charge" of discrimination under Title VII.

Rather, the narrative portion appears to raise only claims of disability discrimination and retaliation.  *See supra* Part I.B.  Put differently, nothing in the Intake Questionnaire puts defendant on notice of a potential national origin discrimination claim.

It was not until January 13, 2021, well over 300 days after plaintiff's termination, which is the last discriminatory act alleged, that plaintiff first alleged national origin discrimination in his DCOHR Charge.  Since plaintiff's DCOHR Charge includes entirely new substantive theories, not addressed in plaintiff's Intake Questionnaire, this Charge cannot be said to "relate back" to the Intake Questionnaire.  *See, e.g.*, *Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 456 (D.D.C. 2014) (concluding that "plaintiff is barred from litigating her Title VII race discrimination claim because she failed to file a charge of race discrimination with the EEOC within 300 days, as required," and explaining that even though plaintiff's two untimely EEOC charges included claims of race discrimination, these charges did not "relate back" to the original timely EEOC charge, which made no mention of race discrimination, since the two new charges "add [the] entirely new substantive theory" of race discrimination to the original charge); *Little*, 2023 WL 2913642, at *3 (concluding that plaintiff "did not properly exhaust any gender discrimination claim arising out of the facts identified in her first EEOC complaint" because she "checked only 'race' and 'reprisal' as alleged bases for discrimination—not gender"—in her EEOC complaint, and "a gender discrimination claim is not like or reasonably related to a race discrimination or retaliation claim"); *Wilson*, 767 F. Supp. at 306 (holding that because the "amendment added a new substantive theory which is fundamentally distinct from the original race discrimination charge," it "did not relate to, or grow out of, [plaintiff's] original EEOC charge").[5]

---

[5]         In the cases cited by plaintiff for the proposition that an EEOC charge can be backdated to the date of the Intake Questionnaire, the EEOC charge and Intake Questionnaire included the same allegations of discrimination

Plaintiff strains to have his national origin discrimination claim relate back to his Intake Questionnaire by highlighting that he checked the box acknowledging, "I want to file a charge of discrimination, and I authorize OHR to investigate the discrimination I describe above."  Intake Q. at 3; *see also* Pl.'s Opp'n at 4, 8.  This authorization, however, only supports the conclusion that plaintiff's DCOHR Charge does not "relate back" to the Intake Questionnaire, since plaintiff put defendant on notice of only his desire to file a charge of discrimination and authorized DCOHR to investigate only "the discrimination I describe above," which, notably, did not mention any claim of national origin discrimination.  Accordingly, plaintiff's federal national origin discrimination claim has not been timely exhausted and is dismissed.

Second, although plaintiff checked the "sexual orientation" box in his Intake Questionnaire, he does not allege any facts supporting discrimination based on sexual orientation or that he was terminated based on his sexual orientation.  In fact, he makes no mention of his sexual orientation at all in the narrative portions of the Intake Questionnaire.  In his DCOHR Charge, plaintiff alleges that Turner-Inman made a series of comments about his sexual orientation, but none of these comments are referenced or even alluded to in his Intake Questionnaire and thus are not like or reasonably related to the allegations therein.  *See, e.g.*, *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 277–78 (D.D.C. 2011) (finding that plaintiff exhausted his administrative remedies for his national origin discrimination claims based on adverse actions that were specifically described in his DCOHR/EEOC form but not the adverse actions that were "not reference[d]" or for which no "factual allegations" were alleged "to support these claims in his DCOHR/EEOC charge," even though plaintiff checked the "national origin" box in his DCOHR/EEOC form); *Robinson-Reeder v. Am. Council on Educ.*, 532 F.

---

and thus the question whether the EEOC charge "related back" to the Intake Questionnaire was not at issue.  *See* Pl.'s Opp'n at 5–6 (citing *Johnson*, 2019 WL 11867066, at *1; *Ross*, 2019 WL 2452326, at *5–6).

Supp. 2d 6, 13–14 (D.D.C. 2008) (dismissing claims for failure to exhaust where "the factual allegations in her EEOC Charge fail to provide the slightest hint that plaintiff may have viewed the probation notice as a retaliatory act," even though the EEOC Charge "state[d] that she was discriminated against when a probation notice was issued based upon her allegedly rude behavior").  Accordingly, plaintiff's federal sexual orientation discrimination claim has not been timely exhausted and is dismissed

Third and finally, plaintiff's DCOHR Charge makes no mention of race discrimination. He neither checked the "race" box in the multiple-choice section nor included any factual allegations in the narrative section that would suggest race discrimination.  The law is well-settled that "[a] vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace," and "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role."  *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997); *see also Park*, 71 F.3d at 907 ("A Title VII lawsuit following [an] EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." (citation omitted)).[6]

In addition, although plaintiff checked the "race" box in his Intake Questionnaire, he does not allege any facts supporting race discrimination or that he was terminated based on his race. Even if he had, a plaintiff cannot "expand the substantive scope of this action by relying on allegations that appear in her Intake Questionnaire that are altogether absent from her formal Charge."  *Ahuja v. Detica Inc.*, 873 F. Supp. 2d 221, 228 (D.D.C. 2012) (collecting cases); *see*

---

[6]    Plaintiff does not dispute that his DCOHR Charge did not allege race discrimination and argues only that he "exhausted his race discrimination claim based on his Hispanic ethnicity by alleging national origin discrimination based on his Hispanic ethnicity."  Pl.'s Opp'n at 11–12.  As explained above, plaintiff's national origin discrimination claim has not been administratively exhausted in a timely fashion.

*also Rasheed v. D.C. Pub. Schs.*, No. 16-cv-665, 2019 WL 3598638, at *7 (D.D.C. Aug. 6, 2019).  To permit a Title VII plaintiff to "reach back to the contents of intake questionnaires to expand the scope of a subsequent lawsuit would, if not eviscerate, then at the very least significantly undermine the policies underlying the exhaustion requirement Congress decided to impose upon Title VII plaintiffs." *Ahuja*, 873 F. Supp. 2d at 230 (citation omitted).  Accordingly, plaintiff's federal race discrimination claim has not been exhausted and is dismissed.

Plaintiff does not dispute that his January 13, 2021 DCOHR Charge, standing alone, is untimely, but defends the timeliness of this Charge by pointing to the worksharing agreement between DCOHR and the EEOC and contending that the Charge takes on the date of his Intake Questionnaire.  *See* Pl.'s Opp'n at 1, 5–9.  This contention is incorrect and stems from plaintiff's misunderstanding of the worksharing agreement.

Ordinarily, "[f]or complaints concerning a practice occurring in a State or political subdivision that has a fair employment agency of its own empowered 'to grant or seek relief,' Title VII instructs the complainant to file her charge first with the state or local agency." *Davis*, 139 S. Ct. at 1846 (quoting 42 U.S.C. § 2000e–5(c)).  "The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, 'whichever is earlier,' to file a charge with the EEOC." *Id.* (quoting 42 U.S.C. § 2000e–5(e)(1)).  This "state filing requirement" is "designed to 'give state agencies a prior opportunity to consider discrimination complaints,'" but "states may voluntarily waive that right if they wish" by "entering into worksharing agreements with the EEOC." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1372 (D.C. Cir. 2008) (first quoting *Love v.*

*Pullman Co.*, 404 U.S. 522, 526 (1972), then quoting *Equal Emp. Opportunity Comm'n v. Com. Off. Prods. Co.*, 486 U.S. 107, 117 (1988)).

When the state or local agency has a worksharing agreement with the EEOC, a complaint need not be filed separately with the state and federal agencies.  *Davis*, 139 S. Ct. at 1846; *see also Schuler*, 514 F.3d at 1372 (explaining that by entering into a worksharing agreement, DCOHR has "preemptively declined its opportunity" to consider discrimination claims in the first instance, "effectively telling the EEOC that it wants nothing to do with [discrimination] claims the Commission receives first").  Rather, once a charge is filed with one agency, the charge is relayed to the other and is deemed filed by both agencies.  *See Davis*, 139 S. Ct. at 1846 (citing 29 C.F.R. § 1601.13); *Schuler*, 514 F.3d at 1372 (explaining that "charges received by one agency under the agreement shall be deemed received by the other agency for purposes of" the timeliness of a charge (quoting 29 C.F.R. § 1626.10(c)).  Put differently, the worksharing agreement allows an individual who would ordinarily be required to file a discrimination complaint with both the state or local agency and the EEOC to file with either.  Such a worksharing agreement does not alter Title VII's requirement that claims must be administrative exhausted before they can be brought in federal court or that an administrative complaint must be filed within 300 days of the challenged practice.

Applied here, the worksharing agreement simply provides that plaintiff's Intake Questionnaire—which is assumed here to qualify as a "charge" under Title VII, *see supra* note 4 —was filed with DCOHR on June 17, 2020, and is also considered to have been filed with the EEOC on this date; and plaintiff's DCOHR Charge, which was filed with DCOHR on January 13, 2021, is also considered to have been filed with the EEOC on this date.  The worksharing agreement does nothing to link the Intake Questionnaire to the DCOHR Charge.

Accordingly, plaintiff's DCOHR Charge, which was plainly filed outside the applicable time limits, remains untimely unless the substance "relate[s] back to the date the charge was first received."  29 C.F.R. § 1601.12(b); *see also Norris v. Wash. Metro. Area Transit Auth.*, 342 F. Supp. 3d 97, 110–11 (D.D.C. 2018) (cataloguing cases).  For the reasons explained above, plaintiff's national origin and sexual orientation discrimination claims, which were raised for the first time in plaintiff's belated DCOHR Charge, cannot be said to "relate back" to the Intake Questionnaire, and plaintiff's race discrimination claims, which were not raised in plaintiff's DCOHR Charge, are not administratively exhausted.  "[T]he law in this Circuit is clear that an allegation as to one type of discrimination does not exhaust all administrative remedies as to another type of alleged discrimination." *Howard v. Fenty*, 580 F. Supp. 2d 86, 90 (D.D.C. 2008) (cataloguing cases).  Accordingly, plaintiff's federal discrimination claims based on sexual orientation (Count 1), national origin, and race (Count 5) are dismissed.

To be sure, courts should be careful not to construe "administrative prerequisites in a manner that makes them traps for the unwary, poised to spring into action and deny those who may have suffered employment discrimination their right to seek redress in federal court." *Johnson v. District of Columbia*, No. 18-cv-399, 2019 WL 11867066, at *1 (D.D.C. June 14, 2019) (citation omitted) (quoted in Pl.'s Opp'n at 7).  The requirement that "a person complaining of a [Title VII] violation file an administrative charge with the EEOC and allow the agency time to act on the charge" and "the requirement of some specificity in a charge," however, are not "mere technicalit[ies]."  *Park*, 71 F.3d at 907 (citation omitted).  "A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process," especially where, as here, the complainant is counselled.  *Id.*

**B.      State Claims: No Tolling of Limitations Period (Counts 1, 2, 3, and 5)**

Under the DCHRA, an employee must file a complaint "in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof."  D.C. Code § 2-1403.16(a).  This one-year limitations period is "toll[ed]" upon "timely filing of a complaint with [DCOHR]" "while the complaint is pending," *id.*, and as a consequence of the worksharing agreement between DCOHR and the EEOC, this one-year limitations period is also tolled upon timely filing of a complaint with the EEOC while the complaint is pending, *see, e.g.*, *Miller v. Gray*, 52 F. Supp. 3d 62, 68–69 (D.D.C. 2014); *Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 83–84 (D.D.C. 2014).

Here, plaintiff filed his original complaint in this case on June 27, 2023, more than three years after his December 12, 2019 termination, and plaintiff did not toll the one-year statute of limitations by filing a charge with the EEOC or DCOHR within a year of his termination.  His Intake Questionnaire, the only complaining document filed within one year of plaintiff's termination, made no mention of his allegations of discrimination based on personal appearance, gender expression, and national origin, and, as discussed above, although plaintiff checked the "sexual orientation" and "race" boxes, he alleged no facts in the narrative portion of the questionnaire suggesting sexual orientation or race discrimination.  *See supra* Parts I.B, III.A.2. The Intake Questionnaire thus did not toll the one-year limitations period for plaintiff's state law claims of discrimination based on sexual orientation (Count 1), personal appearance (Count 2), gender expression (Count 3), and national origin and race (Count 5), which claims must be dismissed as untimely.  *See, e.g.*, *Frett*, 24 F. Supp. 3d at 83 ("Bringing claims to the DOCHR tolls the one-year statute of limitations for bringing *those same claims* to a court." (emphasis added)); *Demissie v. Starbucks Corp. Off. & Headquarters*, No. 13-cv-2002, 2014 WL

12799163, at *3 n.3 (D.D.C. July 31, 2014) (concluding that "the statute of limitations on plaintiff's reduced-hours [retaliation] claim ran" because plaintiff's EEOC charge, which "did not include her reduced-hours retaliation claim," did not "toll the DCHRA statute of limitations as to" this specific claim); *Proctor*, 74 F. Supp. 3d at 459 (concluding that plaintiff's EEOC charge alleging age discrimination did not toll the statute of limitations with respect to her EEOC charge alleging race discrimination, which claim was thus "barred by the statute of limitations").

Without meaningfully addressing the timeliness of his DCHRA claims, plaintiff argues only that his DCHRA claims were properly exhausted.  *See* Pl.'s Opp'n at 9.  To be sure, plaintiff's DCOHR Charge alleged discrimination based on sexual orientation, personal appearance, gender expression, and national origin, but this Charge was not filed until January 13, 2021, over a year after his termination, and, without relating back to his Intake Questionnaire, these claims are time barred.

## IV. CONCLUSION

For the foregoing reasons, defendant's Partial Motion to Dismiss, ECF No. 13, is **GRANTED**.  Plaintiff's discrimination claims based on sexual orientation, national origin, and race, under Title VII, have not been timely administratively exhausted and are thus dismissed. Plaintiff's discrimination claims based on sexual orientation, personal appearance, gender expression, national origin, and race, under the DCHRA, are time barred and are thus dismissed. Plaintiff does not oppose the dismissal of his disability discrimination claims under the ADA and the DCHRA, which claims are thus dismissed as conceded by plaintiff.

In sum, plaintiff's claims in Counts 1 through 5 are dismissed, leaving only his retaliation claims, under Title VII and the DCHRA, in Count 6.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date:   March 29, 2024

_____
**BERYL A. HOWELL**
United States District Judge